Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARINA CLOUGH,<br><br>         Plaintiff,<br><br>    v.<br><br>HILTON GRAND VACATIONS INC., MARK WANG, BRENDA J. BACON, DAVID W. JOHNSON, MARK LAZARUS, PAMELA PATSLEY, LEONARD A. POTTER, and PAUL W. WHETSELL,<br><br>         Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Marina Clough ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is an action against Hilton Grand Vacations Inc. ("Hilton," "HGV," or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Hilton and Dakota Holdings, Inc. ("Diamond"). Diamond indirectly owns all of the interests in Diamond Resorts International, Inc. Diamond is controlled by investment funds and vehicles managed by affiliates of Apollo Global Management, Inc. ("Apollo").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of Hilton common stock.

2

7. Defendant Hilton is a timeshare company that develops, markets, sells, and manages vacation ownership resorts, including in New York City, primarily under the Hilton Grand Vacations brand. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "HGV."

8. Defendant Mark Wang ("Wang") is President, Chief Executive Officer, and a director of the Company.

9. Defendant Brenda J. Bacon ("Bacon") is a director of the Company.

10. Defendant David W. Johnson ("Johnson") is a director of the Company.

11. Defendant Mark Lazarus ("Lazarus") is a director of the Company.

12. Defendant Pamela Patsley ("Patsley") is a director of the Company.

13. Defendant Leonard A. Potter ("Lake") is Chairman of the Board of the Company.

14. Defendant Paul W. Whetsell ("Whetsell") is a director of the Company.

15. Defendants Wang, Bacon, Johnson, Lazarus, Patsley, Lake, and Whetsell are collectively referred to herein as the "Individual Defendants."

16. Defendants Hilton and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

17. On March 10, 2021, Hilton announced that it had entered into a definitive agreement to acquire Diamond Resorts International, Inc. from funds (the "Apollo Funds") managed by affiliates of Apollo, funds managed by affiliates of Reverence Capital Partners, and other Diamond stockholders, in a stock-based transaction. Under the terms of the agreement, the Apollo Funds and other Diamond stockholders will receive 34.5 million shares of Hilton common

3

stock, subject to customary adjustments. The press release announcing the Proposed Transaction states, in pertinent part:

### Hilton Grand Vacations to Acquire Diamond Resorts, Creating the Premier Leisure Operator With the Broadest Offering in the Vacation Ownership Industry

*Combines largest independent timeshare company with the strength of Hilton Grand Vacations' brand and culture*

*Generates over $125 million in run-rate cost synergies, expected to be achieved in the first 24 months following close*

*Expands and diversifies HGV's resort portfolio into over 20 new markets, adding additional drive-to destinations & sales centers while enhancing alignment with the Hilton network to widen customer reach*

March 10, 2021 07:42 AM Eastern Standard Time

ORLANDO, Fla.--(BUSINESS WIRE)--Hilton Grand Vacations Inc. (NYSE:HGV) ("HGV" or "the Company") today announced that it has entered into a definitive agreement to acquire Diamond Resorts International, Inc. ("Diamond") from funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, Inc. (NYSE:APO) (together with its consolidated subsidiaries, "Apollo"), funds managed by affiliates of Reverence Capital Partners ("Reverence"), and other Diamond stockholders, in a stock-based transaction with an equity value of approximately $1.4 billion[1]. Under the terms of the agreement, the Apollo Funds and other Diamond stockholders will receive 34.5 million shares of HGV common stock, subject to customary adjustments.

\*   \*   \*

**Transaction Details**

Under the terms of the agreement, the Apollo Funds and the other Diamond stockholders, including the Reverence Funds, are expected to receive 34.5 million shares of HGV common stock, valued at approximately $1.4 billion, subject to customary adjustments. Upon transaction close, existing HGV shareholders will own approximately 72% of the combined company and the Apollo Funds will own approximately 28% of the combined company.

The transaction, which was unanimously approved by the Board of Directors for both companies, is expected to close in the summer of 2021, subject to customary closing conditions and regulatory approvals. The issuance of HGV common stock in the transaction is subject to shareholder approval.

HGV's management team, including President & Chief Executive Officer Mark Wang, Chief Financial Officer Dan Mathewes, and Chief Operating Officer Gordon Gurnik, will continue to serve in their current roles upon transaction close. HGV's Board of Directors will be expanded from 7 to 9 members, and the Apollo Funds will have the right to appoint two directors as long as their equity ownership remains at or above 15% of the outstanding stock at closing and one director as long as their equity ownership remains at or above 10% of the outstanding stock at closing.

**Advisors**

BofA Securities is acting as exclusive financial advisor for HGV, and Alston & Bird LLP, Simpson Thacher & Bartlett LLP, and Foley & Lardner LLP are acting as legal counsel. Credit Suisse is acting as lead financial advisor and Goldman Sachs is also acting as financial advisor for Diamond, with Paul, Weiss, Rifkind, Wharton & Garrison LLP acting as legal counsel.

HGV has received financing commitments from BofA Securities, Deutsche Bank and Barclays with PJT Partners acting as capital markets advisor to HGV.

*       *       *

**About Hilton Grand Vacations Inc.**

Hilton Grand Vacations Inc. (NYSE:HGV) is recognized as a leading global timeshare company. With headquarters in Orlando, Florida, Hilton Grand Vacations develops, markets and operates a system of brand-name, high-quality vacation ownership resorts in select vacation destinations. The Company also manages and operates two innovative club membership programs: Hilton Grand Vacations Club® and The Hilton Club®, providing exclusive exchange, leisure travel and reservation services for more than 325,000 club members. For more information, visit www.hiltongrandvacations.com.

**About Apollo**

Apollo is a leading global investment manager with offices in New York, Los Angeles, San Diego, Houston, Bethesda, London, Frankfurt, Madrid, Luxembourg, Mumbai, Delhi, Singapore, Hong Kong, Shanghai and Tokyo, among others. Apollo had assets under management of approximately $455 billion as of December 31, 2020 in credit, private equity and real assets funds. For more information about Apollo, please visit www.apollo.com.

**About Diamond Resorts**

Diamond Resorts offers destinations, events and experiences to help members make a habit of breaking from the routine. From unforgettable getaways to

exclusive concert series to VIP receptions and dinners, members turn to Diamond to recharge, reconnect and remind each other what matters most. Our focus on quality resorts, customer service and flexibility means members can return to a favorite resort, book a cruise to explore new countries or attend a once-in-a-lifetime event with the same level of confidence and anticipation. With access to a world of entertainment and activities, a Diamond membership ensures that people are always looking forward to vacation.

**About Reverence Capital Partners**

Reverence Capital Partners is a private investment firm focused on thematic investing in leading global, middle-market Financial Services businesses through control and influence oriented investments in 5 sectors: (1) Depositories and Finance Companies, (2) Asset and Wealth Management, (3) Insurance, (4) Capital Markets and (5) Financial Technology/Payments. The firm was founded in 2013, by Milton Berlinski, Peter Aberg and Alex Chulack, who collectively bring over 90 years of advisory and investing experience across a wide range of financial services sectors. For more information visit www.reverencecapital.com

18.     On April 15, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Proxy Statement, which recommends that Hilton shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Hilton's and Diamond's financial projections; (ii) the financial analyses performed by Hilton's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving BofA.

20.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Merger; Recommendation of Our Board of Directors; (ii) Opinion of Our Financial Advisor; and (iii) Certain Unaudited Prospective Financial Information.

21.     Unless and until the material misstatements and omissions (referenced below) are

remedied before the anticipated shareholder vote on the Proposed Transaction, Hilton shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Hilton's and Diamond's Financial Projections**

22. The Proxy Statement omits material information concerning Hilton's and Diamond's financial projections.

23. With respect to the HGV Forecasts, Adjusted Diamond Forecasts, and HGV Pro Forma Forecasts for Combined Company, the Proxy Statement fails to disclose: (1) all line items underlying (i) Total Revenues (Excluding Cost Reimbursements), (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) Hilton's, Diamond's, and the pro forma combined company's net income projections;[1] and (3) a reconciliation of all non-GAAP to GAAP metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for

---

[1] According to the Proxy Statement, "Adjusted EBITDA is defined ***as net income*** . . ." *See* Proxy Statement at 71-72 (emphasis added). Therefore, Hilton's, Diamond's, and the pro forma combined company's net income projections exist and must be disclosed.

7

or against the Proposed Transaction.

25. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning BofA's Analyses

27. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by BofA.

28. The Proxy Statement fails to disclose the following concerning BofA's "*Selected Precedent Transactions Analysis*": (1) the announcement and closing dates of each transaction; and (ii) the total value of each transaction.

29. The Proxy Statement fails to disclose the following concerning BofA's

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 7, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

"*Discounted Cash Flow Analysis*" of Diamond: (1) all line items underlying the standalone unlevered, after-tax free cash flows that Diamond was forecasted to generate during calendar years 2021 through 2025; (2) the terminal values for Diamond; (3) the individual inputs and assumptions underlying the (i) terminal forward multiples of 6.0x to 7.5x, and (ii) discount rates ranging from 9.50% to 11.50%; (4) the unlevered, after tax free cash flows projected to result from the net cost savings and revenue synergies for calendar years 2021 through 2025, and all underlying line items; and (5) the net cost savings and revenue synergies used in the analysis.

30. The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*" of Hilton: (1) all line items underlying the standalone unlevered, after-tax free cash flows that Hilton was forecasted to generate during calendar years 2021 through 2025; (2) the terminal values for Hilton; (3) the individual inputs and assumptions underlying the (i) terminal forward multiples of 6.5x to 8.5x, and (ii) discount rates ranging from 8.50% to 10.50%; and (4) the number of the Company's fully-diluted shares outstanding.

31. The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to Hilton shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Hilton shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

    **3. Material Omissions Concerning Potential Conflicts of Interest Involving BofA**

32. The Proxy Statement omits material information concerning potential conflicts of

9

interest involving BofA.

33. The Proxy Statement provides that, "HGV has agreed to pay BofA Securities for its services in connection with the merger an aggregate fee of $35 million, a portion of which was payable in connection with its opinion and a significant portion of which is contingent upon the completion of the merger."

34. The Proxy Statement, however, fails to disclose what amount of BofA's fee is contingent upon the completion of the Proposed Transaction. This is material, given, *inter alia*, BofA's key role in facilitating the Proposed Transaction and that "a significant portion of [BofA's fee] is contingent upon the completion of the merger."

35. The Proxy Statement further fails to disclose the amount of financing-related compensation that BofA and/or its affiliates will receive for providing transaction-related debt financing to Hilton.

36. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

40. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

41. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. The Individual Defendants acted as control persons of the Company within the

11

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 7, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*